IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

FARM CREDIT SERVICES OF
AMERICA, FLCA,

Plaintiff,

vs.

NICOLE TIFFT and
CORNERSTONE INSURANCE
SERVICES, INC.,

Defendants.

8:18-CV-80

MEMORANDUM AND ORDER

This matter is before the court on Defendant Nicole Tifft's motion to exclude the expert testimony of Dr. Ernest Goss. Filing 81. For the reasons set forth below, Tifft's motion will be granted.

I. BACKGROUND

For a thorough review of the factual background in this case, see the Court's prior memorandum and order on Tifft's motion for summary judgment. Filing 116. Here, the Court will provide only those facts which are necessary to decide the present motion.

Plaintiff Farm Credit Services of America (FCSA) sells, among other things, crop insurance to customers in Iowa. *See* filing 52 at 2. Tifft worked at FCSA's Emmetsburg, Iowa office as an insurance officer for thirteen years. Filing 52 at 2; filing 92 at 2-3. While at FCSA, Tifft exclusively sold, serviced and marketed crop insurance policies. Filing 92 at 1-2; filing 106 at 2. In January 2018, Tifft left FCSA and went to work for a competitor, Cornerstone Insurance Services. Filing 92 at 41.

In January 2015, Tifft entered into a nonsolicitation and nondisclosure agreement with FCSA. The nonsolicitation agreement prevented Tifft, in the event of separating from FCSA, from calling on and soliciting, directly or indirectly, "any of the customers of [FCSA] with whom [Tifft] actually did business and had personal contact while employed by [FCSA]" except to the extent that the activities did not relate to crop insurance and did not adversely affect FCSA's relationships with those customers. *See* filing 52-1 at 1-2.

FCSA alleges that Tifft breached the nonsolicitation agreement by calling on many of her former crop insurance customers after starting at Cornerstone. *See* filing 108-1; filing 106-2 at 28, 38-39. And a substantial number of those customers did in fact move their crop insurance to Cornerstone. Filing 108-4 at 11, 17-19. Tifft, however, maintains that she only contacted the customers about property and casualty insurance. Filing 106-2 at 28. She does, however, admit that she expected her FCSA customers to follow her to Cornerstone because of her good relationships. Filing 106-2 at 30-31. And Tifft says that she developed those relationships for the most part through personal connections in the small rural community where she grew up and continues to live. *See* filing 93 at 12.

FCSA hired Dr. Ernest Goss to "examine, analyze and estimate the likelihood that the crop insurance customers of Ms. Tifft, as an employee of [FCSA], would be randomly recruited and retained" by Cornerstone. Filing 82-1 at 2. Goss holds a Ph.D. in economics and a master's degree in qualitative methods and accounting. *Id.* He reviewed depositions and reports from the parties and other sources and ultimately concluded that "the likelihood that 96 clients left Farm Credit and moved to Cornerstone was approximately equal to winning the Powerball Lottery 32 consecutive times." Filing 82-1 at 7.

## I. DISCUSSION

Tifft's main argument is that Goss's opinion should be excluded under Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579 (1993) because it is unreliable and irrelevant. Alternatively, Tifft argues that Goss's opinion is inadmissible under Federal Rule of Evidence 403.

The objective of the *Daubert* inquiry is to make certain that an expert, whether basing testimony upon professional studies or personal experience, employs in the courtroom the same level of intellectual rigor that characterizes the practice of an expert in the relevant field. *Am. Auto. Ins. Co. v. Omega Flex, Inc.*, 783 F.3d 720, 722 (8th Cir. 2015). This is a flexible, case-specific inquiry: the Court must decide whether this particular expert had sufficient specialized knowledge to assist the jurors in deciding the particular issues in the case. *Id.* at 723.

*Daubert* established a non-exclusive checklist for trial courts to use in assessing the reliability of expert testimony, including whether the theory or technique can and has been tested, whether it has been subjected to peer review, whether there is a high known or potential rate of error, and whether the theory or technique enjoys general acceptance within a relevant scientific community. *See United States v. Holmes*, 751 F.3d 846, 850 (8th Cir. 2014) (citing *Daubert*, 509 U.S. at 592–94). And for the purposes of evaluating the relevance of expert testimony, the Court must determine whether the expert's reasoning or methodology was applied properly to the facts at issue. *Daubert*, 509 U.S. at 580. To that end, expert testimony that is speculative, unsupported by sufficient facts, or contrary to the facts of the case, is inadmissible. *Marmo v. Tyson Fresh Meats, Inc.*, 457 F.3d 748, 757 (8th Cir. 2006).

But Tifft has provided the Court with no argument, much less evidence, that Goss's methodology is unreliable. Rather, Tifft's primary argument is that "it is neither party's contention that these customers 'randomly' moved their business to Cornerstone," and so Goss's opinion "is not based on any relevant facts." Filing 82 at 8. And the Court agrees that because neither party argues that the customers moved randomly, Goss's opinion is inadmissible. But not because Goss's *methodology* is unreliable.

In fact, Tifft admits, and the Court agrees, that "the basic mathematical calculations completed by Dr. Goss" are quite likely accurate and replicable. *See* filing 82 at 8; *see also* filing 85-1 . And Goss considered facts that are largely relevant and admissible, including FCSA's retention rates, the number of customers served by Tifft at FCSA, and the number of customers that moved their business to Cornerstone. *See* filing 82-1 at 4-6. So, the Court has no doubt that Goss employed the same level of intellectual rigor in developing his opinion in this case as would be used by economists in the field. *See Am. Auto. Ins. Co.*, 783 F.3d at 722.

Nevertheless, Goss's opinion is inadmissible—while it is perhaps *minimally* relevant, the Court agrees that Rule 403 bars its admission. Evidence is relevant if it has any tendency to make a fact more or less probable than it would be without the evidence, and the fact is of consequence in determining the outcome of a case. Fed. R. Evid. 401. Relevant evidence is generally admissible. Fed. R. Evid. 402. However, the court may exclude relevant evidence if its probative value is substantially outweighed by a danger of, among other things, confusing the issues or misleading the jury. Fed. R. Evid. 403. And a trial court has broad discretion to determine the relevancy and admissibility of evidence. *Burris v. Gulf Underwriters Ins. Co.*, 787 F.3d 875, 881 (8th Cir. 2015).

FCSA argues that Goss's opinion is relevant and probative to show that Nicole Tifft engaged in some behavior prohibited by the non-solicitation agreement, because 96 customers would not randomly move their crop insurance from FCSA to Cornerstone. *See* filing 84 at 4. And perhaps FCSA is right. Goss's opinion likely overcomes the very low bar of having *any* tendency to show that Tifft breached the agreement because the customers moving cannot have been a product of random chance. *See* Fed. R. Evid. 401.

But Tifft does not suggest that 96 customers moved randomly. She argues those customers intentionally left FCSA in part because no familiar sales representatives worked at FCSA and in part because they trusted Tifft—a lifelong resident of their tightknit farming community. Tifft denies, however, that she *solicited* their business in violation of the nonsolicitation agreement. And that means that any slight probative value afforded to Goss's opinion would be substantially outweighed by the risk of confusing the issues and misleading the jury. To be clear, Goss's opinion is not probative *at all* as to whether the customers moved for the reasons raised by Tifft, or because, as FCSA alleges, Tifft impermissibly solicited their business. So, Goss's expert opinion would not be helpful to the jury, and will not be admitted. *See* Fed. R. Evid. 702.

IT IS ORDERED that Tifft's motion to exclude the expert testimony of Dr. Ernest Goss (filing 81) is granted.

Dated this 18th day of February, 2020.

BY THE COURT:

John M. Gerrard
Chief United States District Judge